

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable J. E. McDonald, Commissioner
Department of Agriculture
Austin, Texas

Dear Sir:

Opinion No. O-4538
Re: Would the proposed method
of operation in any way
violate the Agricultural
Act or Brokerage Act?

Your recent letter requesting our opinion as
to whether a certain proposed method of operation would
be violative of the Agricultural or Brokerage Acts, has
been duly considered by us. As we understand your ques-
tion, you wish to know specifically whether the scheme
of operation, as outlined, would conflict with the Texas
Agricultural Protective Act (Acts, 45th Leg., 1937, p.
926, ch. 445, as amended by Acts, 45th Leg., 1st C.S.,
1937, p. 1776, ch. 16, Sec. 1, Vernon's Ann. Stat., Art.
1287-1).

From your letter our conception of the method
of operation may be stated to be as follows:  Two in-
dividuals in Lubbock County, Texas propose to form a
partnership for the purpose of buying agricultural com-
modities and farm produce from the producer, reselling
same for a profit.  One of the parties will contact the
various producers, contracting for the purchase of the
commodities, later sending a truck to accept delivery,
paying the producer the agreed price upon receipt of the
produce.  Payment is to be ordinarily made by check,
rather than in currency.

Because of the length of the Agricultural Act
referred to above (Art. 1287-1, Vernon's Ann. Stat., supra),
we shall not set same out in full, but shall attempt to
give the substance thereof as to the matters before us.

It provides for the licensing and bonding of
persons engaged in the business of handling certain

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

perishable fruits and vegetables, whether as a commission merchant, dealer, broker or as agent. The Commissioner of Agriculture is charged with the responsibility of granting or refusing licenses, and approving or rejecting the bonds. That official is given broad and general powers for the enforcement of the Act. In addition to the licenses and bond required, certain penal provisions are directed to the prevention of fraud and false representations by a licensee. One is guilty of a misdemeanor who assumes or attempts to act as a commission merchant, dealer, broker or agent, without a license.

The Act defines the persons of whom licenses are required in the following language:

"The term 'commission merchant' means any person who shall receive on consignment or solicit from the producers thereof any farm product within the terms of this Act for sale on commission on behalf of this producer, or who shall accept any farm product in trust from the producer thereof for the purpose of resale, or who shall sell or offer for sale on commission any farm product, or who shall in any way handle for the account of, or as agent of, the producer thereof any farm product.

"The term 'dealer' means any person other than a commission merchant who for the purpose of resale at wholesale obtains from the producer thereof possession or control of any farm product, except by payment to the producer, at the time of obtaining such possession or control, of the full agreed price of such commodity.

"The term 'broker' means any person engaged in the business of soliciting or negotiating the sale of any farm product.

"The term 'agent' means any person who on behalf of any commission merchant, or dealer, or broker, receives, contracts for, or solicits any farm product from a producer thereof or who negotiates the consignment or purchase of any farm product on behalf of any commission merchant, dealer, or broker." (Subdivisions "e" to "h", Sec. 2 of the Act)

527

While the Act specifically provides that the use of the word "person" includes not only an individual, but "partnership, firm, corporation, company or association," we have concluded that the activities of the partnership as stated in your letter do not come within the above definitions.

We also direct your attention to Section 6 of the Act, reading as follows:

"The terms of this Act shall apply only to the Texas Citrus Fruit Zone, as said area is defined in Section 1 of House Bill No. 553, Chapter 230, General Laws of Texas, Regular Session Forty-second Legislature, and shall not apply to any other section of the State." (Underscoring ours)

The reference to Chapter 230 of the General Laws of the Forty-second Legislature is erroneous; the caption of the enrolled bill reflects the correct reference, being Chapter 350 of the same session Acts. House Bill No. 553, printed as Chapter 350, defines the Texas Citrus Fruit Zone to be composed of the Counties of Cameron, Willacy, Hidalgo, Starr, Zapata, Jim Hogg, Brooks, Kenedy, Kleberg, Nueces, Jim Wells, Duval, Webb, San Patricio, Refugio, Bee, Live Oak, McMullen, La Salle, Dimmit, Maverick, Zavala, Frio, Atascosa, Wilson, Karnes, De Witt, Victoria, Goliad, Calhoun and Aransas.

Your letter does not indicate whether the proposed Lubbock County partnership will operate in any of the above named counties. If it does not, it is our opinion that none of the provisions of the Texas Agricultural Protective Act ( Article 1287-1, Vernon's Ann. Civ. Stat., supra) could apply to it.

You do not refer to any other statute than the one herein discussed, and our answer to your inquiry is limited accordingly. If there are other statutory provisions you wish us to investigate, kindly so advise us.

APPROVED MAY 4 1942

FIRST ASSISTANT
ATTORNEY GENERAL

BW:LW

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Benjamin Woodall
Benjamin Woodall
Assistant

APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN